*In re* MARRIAGE OF GLORIA HAAS, Petitioner-Appellant, and THOMAS O. HAAS, Respondent-Appellee.

Third District   No. 3—90—0478

Opinion filed July 2, 1991.

Richard W. Zuckerman, of Peoria, for appellant.

Kelly & Brady, of Peoria (William R. Kelly, of counsel), for appellee.

JUSTICE SLATER delivered the opinion of the court:

Petitioner appeals from orders entered March 16, 1990, and June 5, 1990, wherein the trial court awarded maintenance, divided property and denied petitioner's motion to reconsider.

Petitioner commenced this action by filing for legal separation on March 23, 1987. By temporary order dated April 10, 1987, petitioner was awarded $1,000-per-month maintenance and the question of petitioner's medical bills was reserved. Respondent later filed an answer and counterclaim for dissolution. Temporary maintenance was reduced to $800 per month commencing March 1, 1988, with the question of petitioner's temporary attorney fees being reserved.

On June 20, 1989, an evidentiary hearing was held on property disposition, maintenance and other issues resulting in petitioner being awarded certain marital property and $600-per-month maintenance for 18 months. Petitioner appeals and we affirm in part and reverse in part.

The parties were married November 27, 1974. At the time petitioner commenced this case, she was 49 years old and respondent was 47 years old. The parties adopted one child during the course of the marriage who is now emancipated. Petitioner is employed by Quails Meadows Country Club and her gross income is $558.62 every two weeks. Respondent is employed by Continental Insurance with a yearly gross income of $49,000. He additionally has the use of a company car and receives bonuses from the company during profitable years. In 1987, respondent received a $6,000 bonus and an additional $10,000 "stay-put" bonus when Continental became respondent's employer. The record is silent whether this money was placed in an account or in any other way has specifically contributed to the accumulation of marital assets. We therefore assume that this money is incorporated into the assets disclosed by the record.

By stipulation, the parties submitted two appraisals of the marital home in the respective amounts of $68,000 and $75,000. The mortgage against the residence was $9,584. The evidence presented revealed additional assets as follows:

| | |
|---|---|
| Travelers Savings Plan | $57,117 |
| Tom Haas IRA | 11,259 |
| Tom Haas IRA | 3,988 |
| Gloria Haas IRA | 10,193 |
| Household furnishings | 3,000 |
| 1982 Chevrolet Caprice | 3,275 |
| Gloria Haas IRA | 4,000 |
| Car Sold By Tom Haas | 3,700 |
| Silver Bar | 600 |
| Tom Haas Retirement Account | Amount Unknown |

Evidence was also presented regarding the monthly living expenses for both parties. Petitioner's monthly living expenses were $1,273.35, and respondent's monthly living expenses were $1,315. Petitioner's counsel additionally filed two separate affidavits of attorney fees and costs totaling $5,647.82.

The trial court, by judgment dated March 9, 1990, divided the marital property as follows:

| Petitioner | Equity Value |
|---|---|
| Marital Home & Accompanying Mortgage | $60,000 |
| Gloria Haas IRA | 10,193 |
| Gloria Haas IRA | 4,000 |
| Household Furnishings | 3,000 |
| Chevrolet Caprice | 3,275 |
| Total Equity Value | $80,468 |

| Respondent | Equity Value |
|---|---|
| Travelers Savings Plan | $57,117 |
| Tom Haas IRA | 11,259 |
| Tom Haas IRA | 3,988 |
| Silver Bar | 600 |
| Total Equity Value | $72,964 |

The trial court also awarded certain other items of personal property which perhaps have more sentimental than dollar value and required a qualified domestic relations order to be entered granting petitioner one half of the value of marital accumulation in respondent's pension. Lastly, the trial court granted petitioner maintenance in the amount of $600 per month subject to review at the end of 18 months. No order was made regarding the payment of attorney fees.

Three issues are raised on appeal: first, whether the trial court erred in dividing marital property; second, whether the trial court erred in awarding petitioner $600-per-month maintenance; and third, whether the trial court erred in not awarding petitioner her attorney fees.

■ Petitioner first argues that the trial court failed to consider that respondent removed $12,000 from his Travelers savings plan when dividing marital property and further asserts that the $12,000 withdrawal constituted a dissipation of marital assets. We need not consider whether dissipation occurred because the record clearly shows that the trial court considered the $12,000 withdrawal when dividing property. Much testimony was presented and argument made regarding the appropriate balance of respondent's Travelers savings plan. Petitioner maintains that the proper amount should be $57,117. Respondent, on the other hand, testified that the balance of the account on the hearing date was $42,000, and that he had previously withdrawn $12,000. Nonetheless, petitioner argues that

respondent received $12,000 from the account which was unaccounted for in the trial court's division of assets. We disagree. No evidence suggested the balance of the account was ever greater than $57,117. In dividing the assets, the trial court used the $57,117 as the balance of the account awarded to respondent. The trial court, therefore, added back respondent's apparent withdrawal(s) from the account without considering whether the respondent dissipated assets. Petitioner was in no way prejudiced by the trial court's failure to determine whether respondent dissipated $12,000 of marital assets.

Petitioner additionally argues that the trial court failed to consider the economic circumstances of the parties and the value of the property awarded to each party when dividing assets. Regarding the valuation of property, our calculations of the trial court's award actually grant petitioner more assets than respondent. Part of petitioner's argument again related back to her improper calculation that when respondent was awarded his savings plan of $57,117, he should also be considered as having received the additional $12,000.

Petitioner also argues that respondent ought to be credited in the distribution of the marital assets with an additional $16,000 based on receipt of his "stay-put" payment and bonus received from his employer. We consider that these payments were incorporated as a part of the marital estate divided by the court because the record is otherwise silent. By our calculations, petitioner has been awarded $80,468 and respondent $72,964 in marital assets.

■ We agree with petitioner that respondent has a greater earning capacity than does petitioner. Aside from this, however, the award of marital property is not inequitable under section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 503(d)). While the parties resided together for 11 or 12 years in duration, this is not a situation where one party has spent considerable time out of the job market to care for young children. Both parties have been employed throughout the course of the marriage, and both are currently employed full time. The value of the property awarded petitioner exceeds that awarded to respondent, and the court has made this award in addition to maintenance. Trial courts have broad discretion in fashioning property dispositions (*In re Marriage of Legge* (1982), 111 Ill. App. 3d 198, 443 N.E.2d 1089), and such decisions will not be set aside absent a clear abuse of discretion. (*In re Marriage of Wolf*

(1989), 180 Ill. App. 3d 998, 536 N.E.2d 792; *In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 511 N.E.2d 676.) Although reasonable men may differ regarding the propriety of the trial court's allocation of property herein, we find no abuse of discretion.

Regarding maintenance, petitioner argues that she is unable to maintain her standard of living with an award of $600-per-month maintenance. Under section 504(b) of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 504(b)), there is no question that respondent has the financial ability to pay maintenance. His net income each month is roughly $2,500 and his monthly living expenses are $1,315. He also has benefits available through his employment which petitioner does not have through her employment. On the other hand, petitioner had about $860 per month net income with monthly expenses of $1,255 and, without maintenance, she would not at this time be able to meet her current obligations without depleting her assets.

■ Maintenance, however, is designed to be rehabilitative in nature and to allow a dependent spouse to become financially independent. (*In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294.) Permanent maintenance is appropriate where it is evident that the recipient spouse is either unemployable or employable only at an income substantially lower than the previous standard of living. Nonetheless, the recipient spouse has a good-faith obligation to become self-sufficient (*In re Marriage of Wade* (1987), 158 Ill. App. 3d 255, 511 N.E.2d 156), with an award of maintenance being used to help the recipient spouse during this transition period. In this case, permanent maintenance is not justified as petitioner has been employed throughout the marriage and seemingly has the potential to become self-sufficient.

■ The primary testimony regarding petitioner's present standard of living revolves around her ability to take vacations and dine out in the manner she had become accustomed to. During the pendency of this cause, however, petitioner has been able to dine out, take numerous vacations and still save money. Although this award of maintenance may provide respondent with more disposable income per month than petitioner, there is no requirement in the law that the parties are to permanently maintain the same standard of living. Section 504(b)(3) primarily concerns the standard of living established during the marriage in relation to the recipient spouse's ability to maintain that standard of living without maintenance. Again, our standard for review is whether the trial court abused its discretion. An award of $600 per month does not appear to cause petitioner a decreased standard of living. Moreover, she seemingly

has all of the education and training she needs to find appropriate employment, there being no contrary indication in the record. Keeping in mind that the maintenance award was reviewable in 18 months, the trial court's award to petitioner of $600-per-month maintenance is not an abuse of discretion.

■ Finally, regarding attorney fees, section 508 of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 508) allows for an award of fees where one party lacks the financial resources and the other party has the ability to pay. (See *In re Marriage of Carini* (1983), 112 Ill. App. 3d 375, 445 N.E.2d 412.) Financial inability exists where requiring payment of attorney fees would strip that party of her means of support or undermine that party's financial stability. (*In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 441 N.E.2d 336.) In this case, it is clear that petitioner will be unable to pay her attorney fees and costs without depleting part of the marital assets awarded to her. Respondent, however, appears to be able to pay his fees as well as petitioner's fees without depleting assets, based on his income and additional bonuses. Requiring petitioner to deplete her assets is not equitable in this case where respondent is able to meet both expenses. The trial court abused its discretion in not allocating attorney fees and not directing that respondent pay petitioner's attorney fees and costs of $5,647.82.

The judgment of the trial court is, therefore, affirmed in all respects except for the trial court's failure to award attorney fees. Respondent is ordered to pay petitioner's attorney fees and costs of $5,647.82.

Affirmed in part; reversed in part.

STOUDER, P.J., and GORMAN, J., concur.