*In re* MARRIAGE OF MARY JO PULS, Petitioner-Appellant, and CHARLES H. PULS, Respondent-Appellee.

First District (3rd Division)   No. 1—91—2233

Opinion filed December 30, 1994.

Biestek & Scott, Ltd., of Arlington Heights (Edward A. Scott III, of counsel), for appellant.

Abrams & Ament, P.C., of Wheeling (Jerrald B. Abrams and Edward R. Jordan, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Petitioner Mary Jo Puls and respondent Charles H. Puls were divorced on June 7, 1991. Petitioner was awarded maintenance and a share of the martial property; however, the trial court declined to award attorney fees and expert witness fees to petitioner from respondent. Petitioner now appeals from the dissolution of marriage order. We affirm.

The issues for review by this court are (1) whether the trial court's distribution of marital property was inequitable with regard to petitioner; (2) whether the award of maintenance to petitioner was insufficient in its amount and duration; and (3) whether the trial court erred in failing to award attorney fees and expert witness fees from respondent to petitioner.

Petitioner and respondent were married on February 18, 1961. Petitioner filed a dissolution of marriage petition in June of 1988. Petitioner, who attended Indiana University but did not receive a degree, was employed doing clerical work during the first two years of her marriage. She stopped working in April of 1962 upon the birth of the parties' first of three children. From that point until October of 1988, petitioner worked as a homemaker.

After the parties' youngest child moved out of the marital home in October of 1988, petitioner moved out of the marital home and into her own apartment that same month. Petitioner also began working in an office. In March of 1989, petitioner began a new job working as a salesperson in a jewelry store. Petitioner worked at the jewelry store for approximately 30 to 35 hours per week. In the spring

of 1990, petitioner began to experience problems with her back. As a result of her medical problems, she was required to reduce her work hours to 16 to 20 hours per week.

Petitioner's net earned income for the years 1989 and 1990 was $3,744 and $3,412, respectively. In addition, petitioner received $1,400 in income from interest earned in 1990. Petitioner also received $2,200 per month from respondent for temporary maintenance as of the date she moved out of the marital home into her own apartment. During 1990, plaintiff received the sum of $40,000 in addition to the temporary maintenance payments.

Respondent attended the University of Dubuque, graduating in 1954 with a bachelor of arts degree in English and economics. Respondent subsequently attended graduate school at the University of Wisconsin where he studied economics. In 1968, he began working with Ralph Zylke. The following year, respondent and Zylke formed a corporation under the name Zylke & Associates, Inc. (the corporation). Respondent owns 40% of the shares of the common stock in the corporation and Zylke owns the remaining 60% of the shares. Respondent also holds the offices of vice-president and secretary and is a director of the corporation.

Respondent's earned income for the years 1989 and 1990 was $196,053 and $219,289.65, respectively. The annual lease value of respondent's Cadillac automobile is $4,160, which was also income to him. Respondent also received $10,400 and $11,200 in income during 1989 and 1990, respectively, from the 215 Revere Drive Building Partnership (building partnership), which owns the office building located at 215 Revere Drive in Northbrook, Illinois (215 Revere Drive property), which is leased and occupied by the corporation. Respondent is a 40% partner in the building partnership and Zylke owns 60% of the remaining shares. By stipulation, the 215 Revere Drive property has a fair market value of $1,250,000. The fair market value of respondent's interest in the building partnership is $333,079. Respondent also received $14,659 in income in 1989 and $12,173 in income in 1990 which was derived from a farm located in Jackson County, Iowa, that was acquired by the parties during their marriage.

The parties stipulated that the fair market value of the farm is $111,400 with a net equity of $48,005.23 as of November 1990. The parties also owned a townhouse located in Arlington Heights, Illinois, which was acquired during their marriage. The parties stipulated that the fair market value of the townhouse is $230,000 and that it had a net equity of $83,607.42.

The parties stipulated that they acquired certain life insurance policies during the marriage, all of which had cash surrender values totalling $46,590.80. In addition, the parties acquired retirement

accounts during their marriage which have a pre-tax gross value of $297,612.99.

The parties also owned automobiles and had bank accounts. Respondent's bank account at what was then known as Talman Federal Savings & Loan Association had a balance of $40,000. Petitioner's checking account was in the amount of $6,800. Respondent's automobile is a 1989 Cadillac in which he owns a 50% interest valued at $14,000. The parties also own a 1969 Triumph TR-3 automobile. The only nonmarital property is a certificate of deposit in the amount of $10,000 owned by petitioner.

After trial, a judgment for dissolution of marriage was entered. The judgment awarded petitioner maintenance and divided the marital property. The court awarded petitioner one-half the equity in the marital home, the farm and insurance policies; all of the retirement money; and all of the cash on hand and other monies that she had in her name. She was also assigned one-half of respondent's interest in Zylke & Associates, Inc., if he sells it, or a minimum of $169,500 if he dies. Maintenance was set at $2,750 per month plus 20% of respondent's net bonus until he retires. Respondent was assigned one-half of his interest in Zylke & Associates, Inc., his interest in the building partnership and one-half of the equity in the marital home, farm and insurance policies. The court denied attorney and expert witness fees to petitioner from respondent. This appeal followed.

First, petitioner contends that the trial court's distribution of the marital property was inequitable because it was contrary to the balance of the factors listed in section 503(d) of the Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 503(d)), and because the trial court accepted the opinion of respondent's expert, Steven Walker, regarding the value of respondent's share in Zylke & Associates, Inc., in lieu of her expert witness', Jerome H. Lipman's, appraisal of said asset.

Courts must divide marital property in "just proportions" after considering the "relevant factors" enumerated in section 503(d) of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 503(d)). The following "relevant factors" are germane to the present case:

"(1) [T]he contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and nonmarital property, including the contribution of a spouse as a homemaker to the family unit;

(2) the value of property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective ***;

* * *

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

***

(9) whether the apportionment is in lieu of or in addition to maintenance;

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and

(11) the tax consequences of the property division upon the respective economic circumstances of the parties." Ill. Rev. Stat. 1987, ch. 40, par. 503(d).

See also *In re Marriage of Eidson* (1992), 235 Ill. App. 3d 907, 911, 601 N.E.2d 298, 301.

It is well settled that a trial court's property allocation will not be disturbed absent a clear abuse of its discretion. (*In re Marriage of Legge* (1989), 111 Ill. App. 3d 198, 207, 443 N.E.2d 1089, 1095.) In determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court. (*Legge*, 111 Ill. App. 3d at 207-08, 443 N.E.2d at 1096.) An abuse of discretion occurs when no reasonable man would take the view adopted by the trial court. *Eidson*, 235 Ill. App. 3d at 911, 601 N.E.2d at 301; *Legge*, 111 Ill. App. 3d at 208, 443 N.E.2d at 1096.

■ We hold that the award of marital property to petitioner was fair and equitable. The record shows that the trial court carefully considered and applied all of the factors enumerated in section 503(d) (Ill. Rev. Stat. 1987, ch. 40, par. 503(d)) that were relevant to this case. Furthermore, petitioner was awarded the assets most valuable and practical for her to retain.

We are not persuaded by petitioner's allegation that the trial court abused its discretion by valuing respondent's share in the corporation in accordance with Walker's appraisal of said assets. Lipman testified that the capitalization of excess earnings method is generally employed in divorce cases. In his valuation report, he wrote that the capitalization of excess earnings method "follows the method outlined in Revenue Rule 59-60 prescribed by the Internal Revenue Service and its amendments." When specifically asked if he used Revenue Rules 59-60 and 68-609 in this case, he answered, "that's correct." On cross-examination, however, he admitted that he followed only part of the formula written in the above rules and that he omitted other steps of the formula.

Respondent's expert witness, however, followed the formula written in the above rules precisely when appraising respondent's

share in the corporation. In appraising the value of respondent's interest in the corporation, Walker considered the facts that Zylke & Associates was a closely held corporation, that respondent was a minority shareholder, that the shares were subject to a shareholders' agreement and that there was no client loyalty to a particular person in respondent's business had a negative effect upon the marketability and value of the shares in question. Using all of the figures from the business' balance sheets, he valued respondent's interest in the corporation at $339,000. On cross-examination, Lipman admitted that his conclusion about client loyalty was a mere assumption.

The trial court accepted Walker's appraisal of respondent's share in the corporation and awarded one-half interest in respondent's holdings in the corporation, with a floor of $169,500, or one-half of the shareholders' agreement buyout price. The trial court's acceptance of Walker's appraisal of the assets in question and its subsequent award to petitioner on the basis of said appraisal did not constitute an abuse of discretion, as we cannot say that no reasonable man would have resolved the issue in the same manner.

Next, petitioner contends that her award of maintenance was insufficient in its amount and duration. We disagree.

Maintenance is to be awarded in such amounts and for such period of time as the court deems just, after its consideration of all the relevant factors, including:

"(1) [T]he financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently ***;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and physical and emotional condition of both parties;

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(7) the tax consequences of the property division upon the respective economic circumstances of the parties." Ill. Rev. Stat. 1987, ch. 40, par. 504(b).

See also *In re Marriage of Eidson* (1992), 235 Ill. App. 3d 907, 913, 601 N.E.2d 298, 302-03; *In re Marriage of Cheger* (1991), 213 Ill. App. 3d 371, 378, 571 N.E.2d 1135, 1140.

The propriety, amount and duration of a maintenance award are matters within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. (*Eidson,* 235 Ill. App. 3d at

913, 601 N.E.2d at 303; *Cheger*, 213 Ill. App. 3d at 378, 571 N.E.2d at 1140.) A trial court abuses its discretion where no reasonable man would take the view adopted by the court. (*Eidson*, 235 Ill. App. 3d at 913, 601 N.E.2d at 303; *Cheger*, 213 Ill. App. 3d at 378, 571 N.E.2d at 1140.) Furthermore, the burden is on the party seeking reversal of the maintenance award to show an abuse of discretion. *Eidson*, 235 Ill. App. 3d at 913, 601 N.E.2d at 303.

■ Petitioner has not met that burden. Petitioner was given the bulk of the martial estate's cash and liquid assets. She was awarded the retirement account consisting of $297,612; one-half equity in the townhouse which amounted to $43,303.50; one-half equity in the Iowa farm which amounted to $24,002.50; one-half equity in the insurance or $23,295.40 in insurance equity; $41,404.82 in cash on hand; and $122,218.95 in dissipated cash. Petitioner also received one-half of a significant nonliquid asset, respondent's 40% interest in the corporation, with the minimum value of her interest being $169,500. We find that the maintenance award in conjunction with these assets was appropriate. Furthermore, the duration of the maintenance is reasonable. The trial court held that the maintenance must cease upon respondent's retirement. It was proper, just and fair for the trial court to consider and provide for the reality that respondent was nearing the end of his employment years, and that upon his retirement, he will probably be unemployed and will have to rely upon his property for support for the rest of his life. Therefore, it is not unfair or an abuse of discretion for the trial court to tie the duration of petitioner's maintenance to the date of her former husband's retirement. Accordingly, the trial court's limitation upon the duration of maintenance to be paid to petitioner is proper.

We reject petitioner's argument that the trial court erred in establishing her maintenance award due to the effect that taxes will have on her income as it also lacks merit. Taxes resulting from the sale of the townhouse and the Iowa farmhouse would not be detrimental to petitioner's financial well being. If the parties realize any taxable gain from the eventual sale of respondent's business interest, petitioner would only pay taxes on her one-half share of any such gain. She has the bulk of the cash to pay any taxes, while respondent has fewer liquid assets to pay his share of any tax liability. The effect of the apportionment of marital property in the present case is that petitioner will be able to live independently with maintenance for the duration of respondent's career and without maintenance thereafter.

The record reflects that the trial court considered the reasonable needs of petitioner in light of her standard of living established

during the marriage, the duration of the marriage, her ability to support herself and the value of both the marital and nonmarital property. (See *In re Marriage of Cheger* (1991), 213 Ill. App. 3d 371, 379, 571 N.E.2d 1135, 1140.) Moreover, petitioner has failed to meet her contention that the trial court abused its discretion in determining her maintenance award. It cannot be said that no reasonable man would take the view of the trial court. (See *In re Marriage of Eidson* (1992), 235 Ill. App. 3d 907, 913, 601 N.E.2d 298, 303.) For the above reasons, the trial court's award of maintenance will not be disturbed.

■ Finally, petitioner alleges that the trial court erred in failing to require respondent to pay her attorney fees and expert witness fees. We disagree.

Section 508 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 508) allows for an award of fees where one party lacks the financial resources and the other party has the ability to pay. (*In re Marriage of Haas* (1991), 215 Ill. App. 3d 959, 965, 574 N.E.2d 1376, 1379-80.) The party seeking an award of fees, however, must establish his own inability to pay and the other spouse's ability to do so. (*In re Marriage of Schriner* (1980), 88 Ill. App. 3d 380, 386, 410 N.E.2d 572, 576.) Financial inability exists where requiring payment of fees would strip that party of his means of support or undermine that party's financial stability. *Haas*, 215 Ill. App. 3d at 965, 574 N.E.2d at 1380.

After weighing the merits of petitioner's argument and examining the record, we find that requiring petitioner to pay her attorney and expert witness fees would neither undermine her financial stability nor strip her of her means of support. Accordingly, the trial court did not abuse its discretion in refusing to order respondent to pay for petitioner's fees.

For the aforementioned reasons, the trial court's dissolution of marriage order is affirmed.

Affirmed.

TULLY, P.J., and CERDA, J., concur.