No. 3-07-0566

Filed January 14, 2009

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | for the 12th Judicial Circuit, |
| LORIANNE REIMER, a/k/a | ) | Will County, Illinois, |
| Lorianne Aztlan, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | 91-D-160 |
| and | ) | |
| | ) | |
| THOMAS REIMER, | ) | Honorable Robert P. Brumund |
| | ) | Judge, Presiding. |
| Respondent-Appellee. | ) | |

JUSTICE McDADE delivered the opinion of the court:

Petitioner, Lorianne Reimer appeals from the trial court's order requiring her to pay respondent, Thomas Reimer, child support arrearages in the amount of $59,299.42. Petitioner also appeals from the court's order requiring her to pay respondent's counsel the sum of $1,755 in fees and costs. We reverse and remand for further proceedings.

FACTS

On January 7, 1991, petitioner filed an action for dissolution of her marriage to respondent. The parties were eventually granted a supplemental judgment for dissolution of marriage on May 9, 1991. Pursuant to the terms of that judgment, petitioner was awarded

residential custody of the parties' three children. Petitioner retained residential custody of the children until June 18, 1991, when respondent was awarded sole custody pursuant to an emergency order of protection. A subsequent order requiring petitioner to pay respondent child support at the rate of $85 per week was entered on October 20, 1992.

On December 20, 1993, respondent filed a petition through the Will County State's Attorney's office seeking payment of child support arrearages. On March 2, 1994, petitioner filed a petition to abate child support alleging a loss of employment. The trial court's minutes reflect that a support arrearage of $3,695 was found on that same day. On March 30, 1994, the trial court entered an order: (1) denying any finding of contempt, (2) abating petitioner's obligation to pay child support to respondent, (3) requiring petitioner to maintain a job search diary, and (4) continuing the matter for status on April 27, 1994. The specific portion as to the abatement of support stated:

> "All support due and owing by [petitioner] is hereby abated *nunc*
>
> *pro tunc* to March 2, 1994, the date of the filing of her petition to
>
> abate."

The court subsequently held multiple status hearings concerning petitioner's employment efforts. Finally, on December 21, 1994, the trial court's minutes reflect that the matter was continued generally on the motion of the State. Petitioner filed no further pleadings regarding the abatement of child support.

The parties' three children remained in the residential care and custody of respondent from the effective date of the abatement, March 2, 1994, through their respective dates of emancipation, except when two of the children were in the care of the State of Illinois due to

2

emotional problems. Specifically, the eldest child was in the care of the State from February 1995 to April 1997. The youngest child was in the care of the State from March 1996 to April 1997. Respondent received no financial support from the State or child support from petitioner subsequent to the effective date of the abatement.

On May 11, 2006, respondent filed a *pro se* pleading seeking to collect child support arrearages owing pursuant to the trial court's order dated, October 20, 1992. On July 3, 2006, respondent filed a three-count pleading seeking collection of the previously adjudicated arrearage, a contempt finding for failure to report employment, and adjudication of arrearages accruing during the abatement period. Count I was resolved by agreement of the parties by virtue of petitioner's tendering of $7,355.26 toward satisfaction of the March 2, 1994, arrearage adjudication. Counts II and III were repled as amended count III. Respondent's amended count III pleading included a letter dated May 12, 2003, from petitioner and her new husband to respondent. The letter states, in pertinent part:

> "The tactic to avoid her having to pay child support was to
> send her to school, and it worked; she graduated two years ago and
> is now teaching full time in private school, and she never had to pay
> a cent in child support or tuition, because of the desperate need for
> teachers. So we actually came out ahead on that one."

Petitioner filed a response to respondent's amended count III. The response alleged the affirmative defenses of equitable estoppel and *laches*.

After the matter was continued on multiple occasions, the court conducted a three-day hearing on respondent's amended count III. Respondent testified that he made no attempts to

3

contact petitioner between 1994 and the date he filed his initial *pro se* pleading in 2006, stating that he did not know where petitioner lived and that he was afraid of petitioner's new husband. Respondent acknowledged having a service address for petitioner in 1994, but was unaware if that address was still valid after 1994. Respondent was unable to identify Supreme Court Rule 296 (134 Ill. 2d R. 296).

Petitioner also testified that she was unaware of Rule 296 or the law concerning abatement. She stated that she did not have any idea that she had to pay child support after March 1994. She testified that her understanding of abatement was that she did not have to pay child support while she was unemployed. She admitted that she turned down multiple offers of employment in favor of educational pursuits. She did not apply for any jobs while pursuing her degree. She earned her degree in December 2001 and obtained employment in March 2002. Petitioner earned $22,906 in gross income during the year of 2002 and $36,300 during the year of 2003. Petitioner made no efforts to contact respondent prior to her letter dated May 12, 2003.

On June 11, 2007, the court declined to hold petitioner in indirect civil contempt. However, the court found that petitioner owed respondent a child support arrearage from March 30, 1994, to February 26, 2003, in the amount of $85 per week. Specifically, the court, relying upon Rule 296(f), found that as of November 22, 2006, petitioner owed respondent a child support arrearage with interest in the amount of $59,299.42. The court rejected petitioner's affirmative defenses of equitable estoppel and *laches*, stating:

"So there is no confusion again, [the court's order dated October 20, 1992,] obligated [plaintiff] to pay to [respondent] the sum of $85.00 per week. Sometime prior to March 30, 1994,

4

actually March 2, 1994, [plaintiff] requested the court by and through an attorney that her obligation to pay support be abated, not suspended. The clear language of the order and the clear language of the motion did not request a suspension. It requested an abatement. Whether or not the attorney for [plaintiff] at the time knew the difference, she knew the difference or anybody else knew the difference, there was, in effect at the time Rule 296, which provides in part that a party may seek a temporary abatement of support. That temporary abatement of support is in existence for a period of six months. And any period of abatement which a party seeks to have thereafter they must come in and request the court to do so. It further provides that the support shall continue to accrue at the same amount which was abated. That's my understanding and belief of the interpretation of *** Rule 296[f]."

Counsel for respondent also filed a petition for attorney fees seeking contribution from petitioner. The balance of counsel's fees was $2,708. The parties each provided the trial court with financial disclosure statements. Petitioner's amended affidavit reflects budgetary expenses of $3,841. This amount includes the monthly $750 arrearage payment petitioner was obligated to pay respondent. Petitioner's affidavit reflects net monthly income of $3,119. Petitioner testified that she satisfies 40% of her reported expenses and her husband satisfies the remaining 60%. Respondent's affidavit reflects household expenses of $4,246 and net monthly income of $4,910. On July 13, 2007, the court entered an order finding the fees and costs pled to be usual,

5

customary and reasonable. The order also required petitioner to pay respondent's counsel the sum of $1,755 in fees and costs.

Petitioner now appeals the trial court's orders requiring her to pay respondent $59,299.42 in arrearages and respondent's counsel $1,755 in fees and costs.

ANALYSIS

In this appeal, petitioner first contends that the trial court erred in finding that she owed respondent a child support arrearage with interest in the amount of $59,299.42. Petitioner presents three arguments in support of this assertion. Initially, petitioner contends that the court erred by not applying the doctrines of (1) equitable estoppel and (2) *laches* to respondent's claim that petitioner owed past-due child support when respondent has not attempted to enforce the support order since 1994. Additionally, petitioner argues that the trial court erred in relying upon Rule 296(f) because the Will County Judicial Circuit has yet to specifically adopt Rule 296. We begin by discussing the relevant case law concerning abatement and Rule 296.

At the outset, we note that Illinois "courts have long possessed the authority to abate support under certain circumstances." *People ex rel. Greene v. Young,* 367 Ill. App. 3d 211, 216, 854 N.E.2d 300, 305 (2006). In *Coons v. Wilder*, 93 Ill. App. 3d 127, 416 N.E.2d 785 (1981), the trial court abated half of respondent's monthly support obligation from December 1977 until January 1, 1980, at which time the support would resume at 1.5 times the original payment until all abated payments were satisfied. *Coons*, 93 Ill. App. 3d at 130, 416 N.E.2d at 789. On appeal, the Second District stated "[w]e find no authority in the Act *** for the proviso ordered by the court that the *** balance of the original support order would only temporarily abate and would continue to accrue as an eventual obligation to be paid." *Coons*, 93 Ill. App. 3d at 134, 416

6

N.E.2d at 792. *Coons* clearly held that payments cannot accrue while the support obligation is abated. *Coons*, 93 Ill. App. 3d at 134, 416 N.E.2d at 792.

Eight years after the *Coons* decision, our supreme court promulgated Rule 296, entitled "Enforcement of Order for Support." 134 Ill. 2d R. 296. Rule 296(f) governs a petition for abatement and states the following:

> "Upon written petition of the obligor, and after due notice to obligee (and the Department of Public Aid, if the obligee is receiving public aid), and upon hearing by the court, the court may temporarily reduce or totally abate the payments of support, subject to the understanding that those payments will continue to accrue as they come due, to be paid at a later time. *The reduction or abatement may not exceed a period of six months except that, upon further written petition of the obligor, notice to the obligee, and hearing, the reduction or abatement may be continued for an additional period not to exceed six months.*" (Emphasis added.) 134 Ill. 2d R. 296(f).

The committee comments to Rule 296(f) state:

> "This paragraph applies only to the short-term inability of the obligor to pay support due to a temporary layoff from employment or other factors. It recognizes that obligors often become temporarily unemployed, rendering them unable to meet their support obligations. This provision is short of a written

7

modification of the Order for Support. It allows the obligor to petition the court, prior to the filing of a petition for adjudication of contempt, for an opportunity to repay those amounts in small increments after employment is regained.

This rule is contrary to the holding of the appellate court in *Coons v. Wilder*, (1981) 93 Ill. App. 3d 127, [416 N.E.2d 785,] in which the court stated, 'We find no statutory or case authority for the trial court to temporarily abate that portion of a support order the supporting parent is without means to presently pay ***.' [*Coons*,] 93 Ill. App. 3d at 135 [, 416 N.E.2d at 792].

The obligor has the option of filing for a modification of the Order for Support under section 510 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 510) [(now 750 ILCS 5/510 (West 2006))]. If a court may modify an Order for Support under section 510 of the Act, it follows that it may also temporarily abate the Order for Support, subject to accrual, during a period of temporary unemployment of the obligor." 134 Ill. 2d R. 296(f), Committee Comments, at 225-26.

The trial court relied upon Rule 296(f) in determining that petitioner owed respondent a child support arrearage with interest in the amount of $59,299.42. Petitioner contends that the trial court erred in relying upon Rule 296(f) to determine that she owed respondent past-due child support. Specifically, petitioner cites subsection (n) of Rule 296 for the proposition that Rule

296(f) is not applicable to the instant case.  Rule 296(n) states the following:

> "*Effective Date.*  The Supreme Court will authorize experimental sites to operate pursuant to this rule, in counties in which both the chief circuit judge and the clerk of the circuit court have agreed to undertake the experimental use of the procedures contained herein, and have jointly sought the Court's permission to do so, by filing a petition with the Administrative Director."  134 Ill. 2d R. 296(n).

The committee comments to Rule 296(n) state:

> "In those counties in which the chief judges and the clerks of the circuit courts agree to participate in an experimental installation, and petition the Administrative Office for leave to implement it at this time, the rule would allow the Supreme Court to authorize a county to operate under the new rule."  134 Ill. 2d R. 296(n), Committee Comments, at 230.

Here, petitioner alleges that Will County is not one of the counties which has petitioned the supreme court for authorization to employ the provisions of Rule 296.  Respondent does not dispute this claim.  Instead, respondent argues that the mere existence of Rule 296 provides authority for a court in a county which has not adopted the rule to abate support payments subject to accrual of the abated amount.  Respondent cites *In re Marriage of Fink*, 275 Ill. App. 3d 960, 656 N.E.2d 1131 (1995) in support of his claim.

The Attorney General in *Fink* filed an intervening brief because the respondent raised a

peripheral challenge to the constitutionality of Rule 296. The respondent, a resident of Piatt County, had argued that if accrual of the reduction of his child support payments to be repaid at a later date was mandatory pursuant to Rule 296, the rule denied him equal protection of the laws because he would not be subject to such an accrual if he were living in a county which had not adopted the rule. The Fourth District, relying on its earlier decision in *In re Marriage of Horn*, 272 Ill. App. 3d 472, 650 N.E.2d 1103 (1995), found no constitutional violation. Specifically, the court stated:

> "We note that Piatt County has chosen to operate pursuant to Rule 296. [Citation.] This court has held that the existence of Rule 296 provides authority for a court in a county which has not adopted the rule to abate support payments subject to accrual of the abated amount in appropriate circumstances. [Citation.] [The respondent] has not been denied equal protection of the laws by virtue of the fact that he resides in a county which has adopted the rule." *Fink*, 275 Ill. App. 3d at 965-66, 656 N.E.2d at 1135.

The respondent in *Horn* filed a petition to modify child support in the trial court of Macon County after his union went on strike. The trial court reduced the payments but also ordered that the original child support order would be reinstated the first Friday after the strike ended. While the pertinent question on appeal was whether the respondent's voluntary participation in the strike constituted a legitimate basis for reducing support, the Fourth District took the opportunity to address *Coons* and the applicability of Rule 296 in a county which has not adopted the rule. Specifically, the court stated:

10

"We recognize the court in *Coons* observed there was no statutory or case authority for the trial court to temporarily abate a portion of a support order the supporting parent was without present means to pay. [Citation.] As a general rule, that principle is correct since the Illinois Marriage and Dissolution of Marriage Act [citation] is geared toward a present ability to pay support. However, there are limits to that general rule. If a payor of child support sacrifices $10,000 of income this year in exchange for receiving $20,000 of income in future years, we should not allow him to impose the burden of child support on the custodian based on his current sacrifice and ignore his future benefit (which may not be reachable for child support at the time it is received). The Supreme Court of Illinois has recently promulgated Supreme Court Rule 296(f) [citation], which permits suspended payments to accrue. Based on this authority, we conclude the *Coons* rejection of [temporary] abatement is no longer applicable to situations which, by their very nature, are inherently temporary.

We take judicial notice that Macon is not one of the counties which has petitioned the supreme court for authorization to employ the full panoply of procedural and substantive provisions of Rule 296. We believe, nevertheless, the existence of the rule, which permits a court to temporarily reduce payments for a period

11

of six months, but requires that the abated amount continue to accrue and be repaid at a later date, provides authority for any court to do the same in appropriate circumstances irrespective of whether the county is operating under the broader provisions of the rule." *Horn*, 272 Ill. App. 3d at 478-79, 650 N.E.2d at 1108.

*Fink* and *Horn* are the only appellate opinions interpreting subsection (n) of Rule 296. Both are Fourth District opinions, however, and we are not bound to follow appellate decisions outside our district. See *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1034, 886 N.E.2d 1166, 1181 (2008). Therefore, upon our own review of Rule 296, we believe that the trial court erred in relying upon subsection (f) when examining whether payments accrued after it abated petitioner's support obligation. Rule 296 was not in effect in Will County either at the time the abatement order was entered or at the time the respondent filed his *pro se* pleading seeking to collect child support arrearages.

The language of Rule 296(n) is clear and unambiguous – Rule 296 is only applicable "in counties in which both the chief circuit judge and the clerk of the circuit court have agreed to undertake the experimental use of the procedures contained herein, and have jointly sought the Court's permission to do so, by filing a petition with the Administrative Director." 134 Ill. 2d R. 296(n). By putting these requirements in a section entitled "Effective Date," we believe the supreme court has clearly signaled an intent that the applicability of the new rule is *conditional* on compliance with its requirements. None of these requirements has been met in the present case.

The Fourth District's holdings in *Fink* and *Horn* simply ignore the express language of Rule 296(n). Instead, the Fourth District has created its own judicial exception to the limiting

12

language found in subsection (n). While we believe it would be equitable for us to also ignore this language, we are required to strictly comply with the rules promulgated by our supreme court. The court has stated:

> "'The rules of court we have promulgated are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be *obeyed and enforced as written*.'" (Emphasis added.) *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 116, 810 N.E.2d 13, 20 (2004), quoting *Bright v. Dicke*, 166 Ill. 2d 204, 210, 652 N.E.2d 275, 277 (1995).

Subsection (n) provides, in pertinent part, that "[t]he Supreme Court will authorize experimental sites to operate pursuant to this rule." 134 Ill. 2d R. 296(n). Because the court has never revisited Rule 296 in the 19 years since its adoption, we must assume that it still only intends for Rule 296 to be applicable in counties "in which both the chief circuit judge and the clerk of the circuit court have agreed to undertake the experimental use of the procedures contained herein, and have jointly sought the Court's permission to do so, by filing a petition with the Administrative Director." 134 Ill. 2d R. 296(n). With that in mind, we respectfully suggest that the time has come for our supreme court to examine the overall applicability of Rule 296.

The procedure allowing trial courts to temporarily reduce or totally abate support payments subject to the understanding that those payments will continue to accrue and must be paid at a later time serves the interest of both the custodial parent and the noncustodial parent. On one hand, it provides the trial court flexibility to accommodate the noncustodial parent in times of temporary layoff from employment or other instances where he/she is unable to meet

13

their support obligations. On the other hand, it ensures that the custodial parent eventually receives all the support provided for in the relevant child support order.

Absent Rule 296, noncustodial parents are presented with the inequitable opportunity to escape completely from fulfilling their support obligations. See *Coons*, 93 Ill. App. 3d at 134, 416 N.E.2d at 792. We believe such a scenario violates the public policy of this state as codified in the Illinois Parentage Act of 1984 (Act) (750 ILCS 45/1 *et seq.* (West 2006)). Section 1-1.1 of the Act expressly provides that "Illinois recognizes the right of every child to the physical, mental, emotional and monetary support of his or her parents under this Act." 750 ILCS 45/1-1.1 (West 2006). Moreover, our supreme court has specifically recognized that Illinois has a strong interest in preserving and promoting the welfare of children. *People ex rel. Sheppard v. Money*, 124 Ill. 2d 265, 277, 529 N.E.2d 542, 547 (1988). The court has noted that "[a] parent's duty to support his or her minor child is among the oldest principles of law." *Sheppard*, 124 Ill. 2d at 269-70, 529 N.E.2d at 544. Unless expressly provided in a court order, "the obligation to support a child only terminates upon the emancipation of the child." *Finely v. Finely*, 81 Ill. 2d 317, 325, 410 N.E.2d 12, 16 (1980). Noncustodial parents should not be allowed the opportunity to escape from paying support merely because they choose to remain unemployed. If anything, their obligation should encourage them to obtain employment sooner rather than later.

In conclusion, we are required by the language of Rule 296(n) to find that the trial court erred in relying upon Rule 296(f) to determine that petitioner owed respondent a child support arrearage, with interest, in the amount of $59,299.42. We refrain from taking any position on whether the doctrines of equitable estoppel or *laches* bar respondent's claim that petitioner owed past-due child support. Instead, we remand with instructions for the trial court to conduct a

14

hearing in order to determine what effect, if any, the March 30, 1994, abatement order had upon the support order entered October 20, 1992. This finding must be made absent any consideration of Rule 296 due to the fact that Rule 296 was not in effect in Will County at the time the abatement order was entered or at the time the respondent filed his *pro se* pleading seeking to collect child support arrearages.

Moreover, the record must be developed in order to understand why the matter was continued generally on December 21, 1994, and what the effect of that order was. As previously noted, the trial court's minutes on that day merely reflect that the matter was continued generally on the motion of the State. The March 30, 1994, abatement order, however, specifically required that petitioner maintain a job search diary and continued the matter for status, apparently to monitor petitioner's employment efforts. The record, however, fails to provide us with any answer as to why no further status hearings were held after December 21, 1994, even though petitioner did not obtain employment until March 2002. Moreover, we are extremely troubled by the fact that petitioner simply decided to cease searching for employment because she wanted to attend school. It appears she was required, *by court order*, to continue to search for employment and her failure to do so might be contempt of the court's order.

Petitioner also contends in this appeal that the trial court erred in ordering her to pay respondent's counsel the sum of $1,755. in fees and costs. Petitioner asserts the parties are not in similar financial circumstances. Specifically, petitioner argues that the parties' financial affidavits reveal a substantial discrepancy of income and expenses. A trial court's decision to award or deny fees will be reversed only if the trial court abused its discretion. *In re Marriage of Schneider*, 214 Ill. 2d 152, 174, 824 N.E.2d 177, 190 (2005).

15

Section 508 of the Illinois Marriage and Dissolution of Marriage Act allows for an award of attorney fees where one party lacks the financial resources and the other party has the ability to pay. 750 ILCS 5/508 (West 2006). The party seeking an award of attorney fees "must establish his own inability to pay *and* the other spouse's ability to do so." (Emphasis added.) *In re Marriage of Puls*, 268 Ill. App. 3d 882, 889, 645 N.E.2d 525, 530 (1994). "Financial inability exists where requiring payment of fees would strip that party of his means of support or undermine the party's financial stability." *Puls*, 268 Ill. App. 3d at 889, 645 N.E.2d at 530. In addition, the trial court may consider a party's misconduct when determining whether to award attorney fees. *In re Marriage of Hale*, 278 Ill. App. 3d 53, 58, 662 N.E.2d 180, 184 (1996).

Here, petitioner reported monthly expenses of $3,841. This amount includes the monthly $750 arrearage payment petitioner was obligated to pay respondent. Petitioner's net monthly income is $3,119. Petitioner testified that she satisfies 40% of her reported expenses and her husband satisfies the remaining 60%. Respondent reported monthly expenses of $4,246. Respondent's net monthly income is $4,910. Reviewing the parties' financial affidavits, we believe respondent has failed to show an inability to pay his own attorney fees. Respondent's monthly income exceeds his monthly expenses by $664. While petitioner's monthly income also exceeds her monthly expenses, incorporating the fact that she only pays 40% of her expenses does not alone justify an award of attorney fees. Respondent was required to prove both his inability to pay and petitioner's ability to do so. See *Puls*, 268 Ill. App. 3d at 889, 645 N.E.2d at 530. Respondent has not met this burden. Thus, we find that the trial court's award of attorney fees constitutes an abuse of discretion.

In coming to this conclusion, we reject respondent's reliance upon the fact that the origin

16

of this action arose from petitioner's failure to pay child support. Specifically, respondent argues that petitioner's failure to pay child support constitutes misconduct and cites *Hale* for the proposition that the trial court did not abuse its discretion because misconduct of the parties can be considered when determining whether to award attorney fees. While petitioner's failure to support her children reflects poorly upon her personal character, we do not believe that this questionable judgment is equivalent to the misconduct discussed in *Hale*. *Hale* involved a spouse's fraudulent acquisition of marital property. See *Hale*, 278 Ill. App. 3d at 57, 662 N.E.2d at 183. Here, respondent does not allege that petitioner engaged in any fraudulent conduct. Thus, we find *Hale* distinguishable on its facts.

For the foregoing reasons, we reverse that portion of the trial court's order requiring petitioner to pay respondent child support arrearages in the amount of $59,299.42. We also reverse that portion of the trial court's order requiring petitioner to pay respondent's counsel the sum of $1,755 in fees and costs. The matter is remanded for further proceedings consistent with this opinion.

O'BRIEN, P.J. and WRIGHT, J., concur.