THIRD DIVISION

May 9, 2001

No. 1-99-2989

In re
 MARRIAGE OF SANJEEV HASABNIS, ) Appeal from the

) Circuit Court of

Petitioner-Appellant, ) Cook County.

) 

and ) 

) 

SHABNUM HASABNIS, ) Honorable,

) Lisa Ruble Murphy,

Respondent-Appellee. ) Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

We are told Hindu ceremonies are composed of traditions -- thousands of years old -- which ordinarily take several hours to perform.  A tradition consistent among the several Hindu denominations is the bride and groom walking in a circle around Agni (fire), tied together, seeking blessing for the fourfold attainments: Dharma (religious-merit), Artha (wealth), Kama (pleasure), and Moksha (salvation).  Here, after a Hindu ceremony and a later civil ceremony in Chicago, the marriage of Sanjeev Hasabnis and Shabnum Parti came to an end.  It left behind issues of maintenance and attorneys' fees that we address in this appeal.  

INTRODUCTION

Sanjeev and Shabnum were married in a Hindu ceremony in Atlanta, Georgia, on May 11, 1996, and in a civil ceremony in Chicago, Illinois, on July 16, 1996.  Approximately 16 months later, Sanjeev and Shabnum separated.  They attempted to reconcile in January and February 1998, but on May 29, 1998, Sanjeev, the husband, filed a petition for dissolution of marriage.

The trial court entered a Judgment of Dissolution of Marriage on July 23, 1999.  In this appeal Sanjeev raises issues concerning maintenance and attorney fees.  He contends the trial court (1) abused its discretion when it awarded Shabnum $96,000 in non-modifiable maintenance in gross, and (2) incorrectly interpreted section 503(j) of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (750 ILCS 5/503(j) (West 1998)) when it ordered Sanjeev to contribute $55,000 -- for a total fee award of $90,000 toward Shabnum's attorneys' fees -- without allowing Sanjeev to review Shabnum's attorneys' time records or to present evidence of the "reasonableness and necessity" of her attorneys' fees.  We affirm the trial court.

FACTS

The trial on Sanjeev's Petition for Dissolution of Marriage began on November 30, 1998.  At the time of trial, Sanjeev was 34 years old, Shabnum was 30 years old, and they did not have any children (adopted or otherwise).  The facts of this case are not in dispute.

Sanjeev Hasabnis

Sanjeev is from Illinois and a doctor of osteopathic medicine.  Just after Sanjeev and Shabnum's marriage in June 1996, they moved to Evanston.  During Sanjeev and Shabnum's marriage, from June 1996 through June 1999, Sanjeev was a resident at Evanston Hospital.  Sanjeev completed his residency at Evanston Hospital in 1999, and in July 2000 he began a three-year fellowship in cardiology at Tulane University in New Orleans.  Until his fellowship is complete, Sanjeev's annual salary is, and will be, about $30,000.

Sanjeev's non-marital property, which is income-producing, is significantly greater than Shabnum's.  Although Sanjeev and Shabnum had little marital property, Sanjeev's non-marital estate at the time of trial was about $1,000,000.  As of July 7, 1999, Sanjeev's trust at Mellon Bank held $250,000, and his gift of stock in a Putnam Voyager Fund from his parents - held in a Paine Webber account - had grown to $900,000. 

Shabnum Hasabnis

Shabnum is from Georgia and is a licensed optometrist.  In 1994 she graduated from optometry school at the University of Alabama and moved back home to Atlanta, Georgia.  Shabnum obtained her optometrist license in Georgia, and from April 1995 to November 1995 she worked with an ophthalmologist.  In January 1996, Shabnum started working for Pearl Vision, earning an annual salary of about $80,000.  

In March 1996, Shabnum left Pearl Vision in anticipation of her marriage to Sanjeev in May 1996.  After marrying Sanjeev, and moving to Illinois, Shabnum obtained an Illinois optometrist license.  From January 1997 to October 1997, Shabnum worked part-time for LensCrafters, earning about $30.00/hour.  

In October 1997, Sanjeev and Shabnum separated.  From October 1997 to May 1998, Shabnum was unemployed for reasons related to their separation, e.g., Sanjeev demanded Shabnum leave Illinois for six weeks in November and December 1997 as a condition of his attending marital counseling.  Sanjeev filed the petition for dissolution of marriage after the couple failed to reconcile.

Following Sanjeev and Shabnum's separation, Shabnum resumed working at LensCrafters on a part-time basis - May through June 1998.  On June 15, 1998, six months before trial and after Sanjeev moved out of their Evanston apartment, Shabnum produced an asset disclosure statement setting forth her 1998 gross income of $6,619 and net income of $4,925.  Averaged out for the year, her net monthly income was $988 and her monthly living expenses were $5,085 (a shortfall of about $4,000).

In September 1998, Shabnum moved back to her parent's home in Atlanta, Georgia.  At the time of trial, Shabnum was unemployed.  However, she did find work on a day-by-day basis as an independent contractor earning about $30.00/hour.

The Parents

Sanjeev and Shabnum's parents were very involved in the couple's meeting, courtship, and marriage.  Their parents had several conversations, without Sanjeev and Shabnum, regarding Sanjeev and Shabnum's finances and the extent to which Sanjeev's parents would financially assist the couple while Sanjeev pursued his fellowship and residency.  Consequently, Sanjeev's parents provided significant financial assistance to Sanjeev and Shabnum during their three-year marriage.

During the course of Sanjeev and Shabnum's courtship and marriage, they received various gifts from their parents, including a car (a Lexus worth $31,000), money ($26,400 for rent, $6,500 cash, and $3,500 for credit card payments), jewelry and clothing (worth $21,000 in total), and rugs.  In addition, Sanjeev and Shabnum acquired various items of marital property, including furniture, furnishings, another automobile, bank accounts, and individual retirement accounts (IRA).  

The Trial Court's Memorandum Opinions

The trial court, after considering all the evidence, testimony, and arguments, entered its Judgment of Dissolution of Marriage.  Attached were three detailed Memorandum Opinions: (1) a Memorandum Opinion on March 23, 1999, containing the trial court's findings and rulings; (2) a Supplemental Memorandum Opinion on May 21, 1999, modifying the prior Memorandum Opinion; and, (3) a Memorandum Opinion on July 23, 1999, containing the trial court's findings and rulings on the issue of Sanjeev's contribution to Shabnum's attorneys' fees.  

MARCH 23, 1999, MEMORANDUM OPINION

The trial court, after considering the factors set forth in section 504(a) of the IMDMA (750 ILCS 5/504(a) (West 1998), found: 

"-Sanjeev has a considerable non-marital estate;

 

-Shabnum is currently unemployed and has no income with which to meet her daily needs; 

-Shabnum's earning capacity has been impaired, at least on a temporary basis, by her marriage. Shabnum was required to change her employment positions on at least two occasions in order to accommodate Sanjeev's career (i.e., the move to Evanston) and to placate Sanjeev's demands on their marriage (i.e., Sanjeev's demand that Shabnum leave the State of Illinois for six weeks in November, 1997);

-the parties enjoyed a very comfortable lifestyle during the course of their marriage; and,

-Shabnum made significant contributions to the domestic duties of the marriage and to the support of Sanjeev's career."  Mem. Op. at 6 (March 23, 1999)

Sanjeev contended Shabnum was not a candidate for maintenance because she had the ability to work.  He claimed Shabnum intentionally delayed securing full-time employment in anticipation of the trial court's decision.  The trial court disagreed.  

The court said:  "Sanjeev considerably underestimates the negative impact this marriage has had on the progress of Shabnum's career and her employment opportunities."  The court then awarded Shabnum $4,000 per month in non-modifiable maintenance, retroactive to June 1988 through May 2000, with Sanjeev to receive credit for the maintenance payments he has made.  

Sanjeev was awarded the following non-marital property (totaling over $900,000 as of the date of trial):

(1) the account held at Mellon Bank with a balance of about $173,000 (about $250,000 as of July 7, 1999); 

(2) the furniture and furnishings in his possession (about $25,000), which were purchased with funds from his Mellon Bank account; 

(3) the Paine Webber account into which the Putnam Gift was transferred with a balance of $778,722.87 (about $900,000 as of July 7, 1999); and, 

(4) the First Chicago account in his name (about $1,700).

Sanjeev was awarded the following marital property (totaling about $9,100): 

(1) the Bank One checking account in his name (about $1,600); 

(2) the IRA in his name (about $2,000); 

(3) the 1993 Acura automobile in his possession (about $13,000); and, 

(4) the MBNA credit card debt in his name (about $7,500).

Shabnum was awarded the following non-marital property: 

(1) the jewelry and clothing given her by Sanjeev's parents (about $21,000); 

(2) all furniture and furnishings in her possession, owned by her prior to marriage.  

Shabnum was awarded the following marital property: 

(1) two checking accounts in her name in the State of Georgia (about $3,000); 

(2) the IRA in her name (about $2,000); 

(3) the 1995 Lexus in her possession (about $17,100); and,

(4) all other furniture and furnishings within her possession and control.

The trial court directed Sanjeev to pay all of Shabnum's "reasonable and necessary" attorneys' fees based on the court's understanding that Sanjeev and Shabnum had agreed the trial court would consider the issue of contribution to attorneys' fees simultaneously with their trial (pursuant to 750 ILCS 5/503(j) (West 1998) and 750 ILCS 5/503(j)(2) (West 1998)).

On March 29, 1999, after the Memorandum Opinion of March 23, 1999, Sanjeev filed a notice to produce for reproduction pursuant to Illinois Supreme Court Rule 214.  The notice to produce requested Shabnum's attorneys produce their billing records in connection with their representation of Shabnum from the case's inception.

On April 6, 1999, Shabnum filed objections to Sanjeev's notice to produce.

On April 12, 1999, Sanjeev filed a motion to reopen proofs to permit examination of Shabnum's employment and income since she moved back to her parent's home in Georgia.  On April 16, 1999, Shabnum filed a motion to strike Sanjeev's motion to reopen proofs, which the trial court granted on April 26, 1999.

MAY 21, 1999, SUPPLEMENTAL MEMORANDUM OPINION

The trial court modified three aspects of the Memorandum Opinion of March 23, 1999: (1) Sanjeev's contribution to Shabnum's attorneys' fees; (2) the monthly amount, duration, and tax consequences of Shabnum's maintenance award; and, (3) the modifiability of her maintenance award.

Because the court did not find any support for its understanding that the parties agreed to deciding the issue of contribution of attorneys' fees contemporaneously with the trial, it vacated the order directing Sanjeev to pay one hundred percent of Shabnum's "reasonable and necessary" attorneys' fees.  

Instead, the trial court ordered a contribution hearing to be held pursuant to section 503(j) (750 ILCS 5/503(j) (West 1998)).  The court said, "if necessary[,] after the contribution hearing, the court will conduct a hearing on the reasonableness and necessity of the attorneys' fees."  

The court also acknowledged that the March 23, 1999, Memorandum Opinion failed to address income tax consequences of Shabnum's maintenance award.  Accordingly, it modified the March 23, 1999, Memorandum Opinion as follows:

"The court *** determines that Shabnum's marriage has disrupted her life, her career and negatively impacted her employment opportunities.  Therefore, the court awards Shabnum, pursuant to Section 504 of Illinois Marriage and Dissolution of Marriage Act and 
In re Marriage of Schlosser
, 241 Ill. App. 3d 49 (3d Dist. 1993), maintenance in gross in the sum of $96,000 which is to be non-modifiable, except in the event of Shabnum's death.  The maintenance in gross shall be made in equal monthly payments of $2,666.67 retroactive to June, 1998 with the last payment to be made in May, 2001.  Sanjeev shall receive credit for those maintenance payments he has made pursuant to the temporary orders."  Mem. Op. at 2 (May 21, 1999)

On May 26, 1999, the trial court sustained objections to Sanjeev's notice to produce Shabnum's attorneys' billing records.  Consequently, no billing statements were submitted by Shabnum's counsel to Sanjeev or to the trial court in the contribution hearing.

On June 11, 1999, Sanjeev presented the trial court with his request for approval of letters rogatory.  Shabnum's father, Surinda Parti, in an engagement agreement between Shabnum and her counsel, guaranteed payment of Shabnum's attorneys' fees in the event Shabnum failed to pay her counsel.  As such, Sanjeev sought to take the deposition of Surinda Parti, in Georgia, on the issue of a guarantee of payment.  On June 11, 1999, the court denied Sanjeev's request for approval of letters rogatory.

On June 23, 1999, in compliance with a June 17, 1999, court order, Shabnum filed answers to interrogatories that disclosed Shabnum's employment and income since she moved back to her parent's home in Georgia, and produced her pay stubs from March 3, 1999 through June 16, 1999.  She disclosed that

in January 1999, she made $1,775.00;

in February 1999, she made $1,500.00;

in March 1999, she made $6,900.00;

in April 1999, she made $7,635.00;

in May 1999, she made $7,670.00;

in June 1999, she made $3,465.00 (through June 16, 1999).

Shabnum also said she was still living with her parents and she detailed her monthly living expenses, which totaled about $1,220.

JULY 23, 1999, MEMORANDUM OPINION

On July 29, 1998, September 24, 1998, and May 21, 1999, the court had entered Orders requiring Sanjeev to pay a total of $35,000 in interim attorneys' fees to Shabnum's counsel.  On June 30, 1999, Shabnum owed an outstanding balance of $76,392.01 to her lawyer.  On July 7, 1999, the court held a contribution hearing pursuant to section 503(j) (750 ILCS 5/503(j) (West 1998)). 

Following the contribution hearing, the court made findings with respect to contribution:

"Pursuant to the Memorandum Opinion issued on March 23, 1999 and the Supplemental Memorandum Opinion issued on May 21, 1999, the court previously identified the factors pursuant to Section 504 of the Illinois Marriage and Dissolution of Marriage Act that justify the award of maintenance in gross in this case.  With respect to the factors set forth in Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act, the court makes the following findings: Shabnum made significant contributions during the parties' brief marriage; Sanjeev dissipated marital assets; Sanjeev has significant non-marital assets; Shabnum has insignificant non-marital assets; and the assets of the marital estate are insignificant, consisting primarily of an automobile given to the parties by Sanjeev's parents.

Given the court's consideration of the facts of this case and the factors set forth in Sections 503 and 504 of the Illinois Marriage and Dissolution of Marriage Act, the court hereby orders Sanjeev to contribute the additional sum of $55,000 toward the outstanding balance of attorneys' fees and costs incurred by Shabnum ***."  Mem. Op. at 3 (July 23, 1999)

Sanjeev contended Shabnum should be responsible for her legal fees because she refused to settle the case.  In support of his argument, Sanjeev asked the trial court to consider 
In re Marriage of Mantei
, 222 Ill. App. 3d 933, 583 N.E.2d 1192 (1991) and 
In re Marriage of Auriemma
, 271 Ill. App. 3d 68, 648 N.E.2d 118 (1995).

The court found the cases cited by Sanjeev were not applicable to its consideration of contribution.  The court said, 

"First, the court finds that Shabnum was not extremely litigious in this case.  In fact, Shabnum and counsel for Shabnum were extremely cooperative in accommodating Sanjeev's request to place this case "on the fast track."  Between June and December, 1998, Shabnum did not present a myriad of motions for consideration by the court.  Shabnum cooperated with discovery and stipulated to the grounds for the dissolution of marriage.  Throughout the pendency of this case, Shabnum and [her counsel] have confined the issues in the case to the characterization of the Putnam Gift, support for Shabnum and the payment of attorneys' fees.  At no time did Shabnum present irrelevant or superfluous issues to the court.

Sanjeev filed his petition for dissolution for marriage in June, 1998, discovery was conducted, and the case was tried in December, 1998.  Given that this case was tried within six months from the date that the petition for dissolution of marriage was filed, the court strongly disagrees with Sanjeev's assertion that the case, and the litigants, were completely out of control[,] as was the case in 
Auriemma
.

Second, the court disagrees with Sanjeev that Shabnum bears the responsibility for the parties' failure to settle the case.  Based upon the testimony at the hearing on the Contribution Petition, the court finds that neither the parties nor their counsel engaged in any settlement negotiations.  Moreover, the court does not consider Shabnum's refusal to acquiesce to Sanjeev's position to be tantamount to an unwillingness to compromise[,] as was present in 
Mantei
.  If the refusal to acquiesce to the demands of the other party is the measure of unwillingness to settle[,] then Sanjeev is just as responsible as Shabnum for the parties' failure to settle the case.  Indeed, it would be difficult for the court to determine which of the two parties was more recalcitrant in their position."  Mem. Op. at 2 (July 23, 1999)

This appeal followed from the Judgment of Dissolution of Marriage entered on July 23, 1999.

Additional Issues Raised On Appeal

In addition to appealing Shabnum's award of maintenance in-gross and contribution to her attorneys' fees, Sanjeev contends the trial court erred: (1) when it sustained Shabnum's objections to Sanjeev's notice to produce Shabnum's attorneys' time records; (2) when it granted Shabnum's motion to strike Sanjeev's motion to reopen proofs to discover Shabnum's earnings after her return to Georgia; and, (3) when it denied Sanjeev's request for approval to issue letters rogatory to take the out-of-state discovery deposition of Shabnum's father who had guaranteed payment of Shabnum's attorneys' fees.

DECISION
 

Maintenance

Sanjeev contends the trial court abused its discretion in awarding maintenance to Shabnum in the amount of $96,000 in non-modifiable maintenance in gross -- to be made in equal monthly payments of $2,666.67 retroactive to June 1998 with the last payment to be made in May 2001.  Sanjeev appeals (1) Shabnum's right to maintenance, (2) the amount and duration of the maintenance award, and (3) its "in gross" nature. 

He also contends the trial court erred in granting Shabnum's motion to strike and dismiss Sanjeev's motion to reopen proofs which sought to allow evidence of Shabnum's employment and income following her return to Georgia in September 1998.  

The propriety, amount, and duration of a maintenance award lie within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.  
In re Marriage of Gattone
, 317 Ill. App. 3d 346, 355, 739 N.E.2d 998 (2000).  An abuse of discretion occurs where no reasonable person would take the view adopted by the trial court.  
In re Marriage of Grunsten
, 304 Ill. App. 3d 12, 20, 709 N.E.2d 597 (1999).

We find no abuse of discretion in the amount or nature of the trial court's award of maintenance.

[Nonpublishable material under Supreme Court Rule 23 omitted here]

Attorney Fees

On July 7, 1999, before the Judgment of Dissolution of Marriage, the trial court held a contribution hearing pursuant to section 503(j) (750 ILCS 5/503(j) (West 1998)).  Following the contribution hearing, the court ordered Sanjeev, in "consideration of the facts of this case and the factors set forth in Sections 503[(d)] and 504[(a)] of the Illinois Marriage and Dissolution of Marriage Act," to contribute an additional $55,000 toward the outstanding balance of Shabnum's attorney's fees (bringing the total to $90,000).

Sanjeev contends: (1) the trial court committed error by interpreting section 503(j) as not requiring a determination of the "reasonableness and necessity" of Shabnum's attorneys' fees; (2) the court erred in sustaining Shabnum's objections to the production of her attorneys' billing records on the grounds of attorney-client privilege and standing; (3) the court abused its discretion in failing to review Shabnum's attorneys' billing records; (4) the court erred in denying Sanjeev's request for approval of letters rogatory to depose Shabnum's father with respect to his guaranty of her attorneys' fees; and, (5) the court abused it discretion in requiring Sanjeev to contribute $90,000 
in
 
toto
 toward Shabnum's attorneys' fees, in light of her ability to pay her own attorneys' fees through her earned income and the guaranty signed by her father.

SECTION 508(a) AND SECTION 503(j
) OF THE IMDMA

Before June 1, 1997, section 508 of the IMDMA governed the award of attorney fees and final fee petitions (i.e., whether attorney fees are reasonable and necessary) in dissolution cases.  750 ILCS 5/508 (West 1994).  Former section 508(a) provided:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a 
reasonable amount
 for his own costs and attorney's fees and for the costs and attorney's fees 
necessarily incurred
 *** [by the opposing party]."  (Emphasis added) 750 ILCS 5/508(a) (West 1994).

Effective June 1, 1997, the legislature amended the IMDMA by substantially changing section 508 and adding section 503(j) (1997 Amendments) (see Pub. Act. 89--712, § 5, effective June 1, 1997). 

Section 508(a) of the IMDMA now states, in part:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a 
reasonable amount
 for his own or the other party's costs and attorney's fees.  ***  
At the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503
."  (Emphasis added) 750 ILCS 5/508(a) (West 1998).

Section 503(j) provides:

"After proofs have been closed in the final hearing on all other issues between the parties *** and before judgment is entered, 
a party's petition for contribution to fees and costs incurred in the proceeding shall be heard and decided
, 
in accordance with the following provisions
:

   ***

   (2) 
Any award of contribution to one party from the other party shall be based on the criteria for division of marital property under this Section 503 and, if maintenance has been awarded, on the criteria for an award of maintenance under Section 504
.

   (3) The filing of a petition for contribution shall not be deemed to constitute a waiver of the attorney-client privilege between the petitioning party and current or former counsel; and such a waiver shall not constitute a prerequisite to a hearing for contribution.  If either party's presentation on contribution, however, includes evidence within the scope of the attorney-client privilege, the disclosure or disclosures shall be narrowly construed and shall not be deemed by the court to constitute a general waiver of the privilege as to matters beyond the scope of the presentation."  (Emphasis added) 750 ILCS 5/503(j) (West 1998).

THE "REASONABLENESS AND NECESSITY" OF ATTORNEY FEES

Sanjeev contends that because 750 ILCS 5/508(a) (West 1998), the umbrella provision linking all three statutes on fees, states "[t]he court *** may order any party to pay 
a reasonable amount
 for his own or the other party's costs and attorney's fees," and "[a]t the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503," the trial court 
must
 determine the "reasonableness and necessity" of attorney fees in the contribution hearing. 

The legislature has the authority to devise procedures to be followed in causes of action it creates, such as dissolution of marriage.  
Strukoff v. Strukoff
, 76 Ill. 2d 53, 60, 389 N.E.2d 1170 (1979).  When interpreting statutes, courts must ascertain and give effect to the intent of the legislature.  
In re Marriage of Takata
, 304 Ill. App. 3d 85, 94, 709 N.E.2d 715 (1999).  The best indicator of legislative intent typically is the plain and ordinary meaning of the language of the statute.  
Takata
, 304 Ill. App. 3d at 94.  

When we investigate legislative intent, every part of the statute must be considered together and every word or phrase should be given some reasonable meaning within the context of the statute.  
Takata
, 304 Ill. App. 3d at 94.  When the statutory language is clear and unambiguous, there is no need to turn to other tools of statutory construction.  
In re Marriage of Mitchell
, 181 Ill. 2d 169, 173, 692 N.E.2d 281 (1998).

Whether the trial court has to conduct a contribution hearing to determine attorneys' fees under section 503(j) of the IMDMA was addressed in 
In re Marriage of McGuire
, 305 Ill. App. 3d 474, 477, 712 N.E.2d 411 (1999).  One purpose of the 1997 amendments "was to reduce the potential for conflicts of interest between attorneys and their clients and for infringement upon the attorney-client privilege in cases where attorney fees became an issue."  
McGuire
, 305 Ill. App. 3d at 477.

Section 503(j) alters the procedures by which issues regarding attorneys fees are presented and heard in dissolution cases, but does not constitute a substantive change.  
McGuire
, 305 Ill. App. 3d at 478. 

The legislature intended final fee petitions (fees and costs awarded to counsel from a former client) to continue to be governed by the provisions of section 508, 
but
 petitions for contribution are to be governed by the provisions of section 503(j).  
McGuire
, 305 Ill. App. 3d at 478.  The court held petitions for contribution and petitions for approval of final fees should be considered in separate and distinct proceedings.  
McGuire
, 305 Ill. App. 3d at 477. 

The court in 
In re Marriage of Brackett
, 309 Ill. App. 3d 329, 345, 722 N.E.2d 287 (1999), mostly agreed with 
McGuire
.  The court found the word "shall" contained in section 503(j) connotes a mandatory obligation of the trial court to consider petitions for contribution of attorneys' fees in a separate and distinct proceeding.  
Brackett
, 309 Ill. App. 3d at 345, citing 
Takata
, 304 Ill. App. 3d at 95. 

The plain and ordinary meaning of section 503(j) is that the trial court 
must
 hear and decide a party's petition for contribution to attorney fees and costs after the close of proofs on all other issues.  
Brackett
, 309 Ill. App. 3d at 345. 

The 
Brackett
 court tempered its agreement with 
McGuire
 by cautioning against too literal a reading of section 503(j).  The court did not read section 503(j) as 
requiring
 in every case an additional hearing, which would further burden already overburdened trial courts, but, rather, as 
directing
 a trial court to hear additional proofs, through testimony or otherwise, in the context of preexisting proceedings when a section 503(j) petition for contribution is filed.  
Brackett
, 309 Ill. App. 3d at 345.  But, "[i]f the trial court wishes to hold a separate and distinct hearing on the petition, it has the discretion to do so."  
Brackett
, 309 Ill. App. 3d at 345.  

We do not read section 508(a) or section 503(j) as explicitly requiring the trial court to determine the "necessity" of attorneys' fees.  That would violate a cardinal rule of statutory construction that prohibits reading into the statute limitations, exceptions, and conditions that the legislature did not express, or, in this case, removed (compare 750 ILCS 5/508(a) (West 1994) with 750 ILCS 5/508(a) (West 1998)) -- the words "necessarily incurred" are gone.  See 
In re Marriage of Konchar
, 312 Ill. App. 3d 441, 444, 727 N.E.2d 671 (2000).

We are left, then, with the requirement that the amount ordered under section 508(a) be a "reasonable amount."  That section in turns directs us to section 503(j), which does not use the word "reasonable."  Section 503(j) does require ("shall") the trial court to award contribution of fees based on marital property criteria (under section 503) and, if maintenance has been awarded, maintenance criteria (under section 504).

Section 503(j) does not expressly require the award of fees be reasonable, but since we cannot envision a grant of legislative authority that tells judges to be unreasonable, we read the statute as incorporating a reasonability requirement.  

Questions remain.  Section 503(j) does not attempt to formalize the kind of hearing that must be conducted.  While it tells the trial judge what it "shall" consider –- marital property criteria and, if awarded, maintenance criteria -– section 503(j) does not say whether the trial judge can or must consider such other matters as billing records and the reasonableness of the fee charged by the petitioner's attorney.

In most cases, once the trial court has weighed marital property criteria and, if awarded, maintenance criteria, it will have enough of a record to determine the contribution amount.  In addition, it is free to consider the petition "in the context of preexisting proceedings."  
Brackett
, 309 Ill. App. 3d at 345.  We see nothing in section 503(j) that stops the trial judge from considering other competent and relevant evidence.  Nor do we see anything that requires it.

At any rate, this trial court said it was considering "the facts of this case" and the sections 503 and 504 factors.  Our reading of the record supports that claim.  The evidence was examined with care.  In addition, whether or not a separate and distinct hearing is required, this trial court held one.  All parties had the opportunity to be heard.  Their lawyers testified.  Documents were offered in evidence.

True, the trial judge did not require production of Shabnum's lawyers' billing records.  Nor did the judge examine those records.  But under circumstances such as these, Illinois law does not require production or examination of the petitioner's attorney's billing records.  See 
Raintree Health Care Center v. Illinois Human Rights Comm'n
, 173 Ill. 2d 469, 495–96, 672 N.E.2d 1136 (1996).  

We find the trial court did not abuse its discretion when it declined to order production of the billing records or when it saw no need to examine those records.  Further, we find no abuse of discretion in denying Sanjeev's request for approval of letters rogatory to obtain the testimony of Shabnum's father.  Because the trial judge had enough evidence to make an informed decision, we see no need to address the question of whether the billing records were protected by the attorney-client privilege.   We realize one court has held that under section 508(a) the trial judge "must," in making an award of fees pursuant to a contribution petition, "consider whether the attorney fees charged by the petitioning party's attorney are reasonable."  
In re Marriage of DeLarco
, 313 Ill. App. 3d 107, 114, 728 N.E.2d 1278 (2000).  Although we do not see that requirement in any of the relevant statutes, we need not decide whether we will part company with 
DeLarco
 on this point.  It is clear to us the trial court did examine the amount of fees Shabnum had paid and still owed her attorneys.  The trial court was asked by Shabnum to award fees it found "equitable, just, and in accordance with the provisions of section 503(j) ***."  We believe the trial court did so.

A critical examination of the reasonableness of the petitioner's attorneys' fees would not be consistent with the obvious goals of section 503(j) -- to avoid conflicts of interest between petitioner and her attorney and to preserve the lawyer-client privilege.

In the contribution hearing, the litigants are the parties.  Unlike a section 508(c) hearing, the 503(j) contribution hearing is for the petitioner's benefit, not her lawyers'.  The contribution provision was taken out of the basic fee section (section 508) and placed into the property division section of the IMDMA (section 503) to make the point.  See 
A General Explanation of the "Leveling of the Playing Field" in Divorce Litigation Amendments
, 11-SEP CBA rec. 32 (Sept. 1997).

On July 7, 1999, the trial court conducted a hearing on the contribution petition.  It heard the testimony of Timothy Daw, the attorney primarily responsible for Shabnum's legal representation, the testimony of Michael Kalcheim, the attorney primarily responsible for Sanjeev's legal representation, and received various documents into evidence. 

With respect to Shabnum's attorneys' fees, the trial court heard evidence of computation of fees, the total fees owed by Sanjeev (about $125,000) and Shabnum ($116,392), who performed the services for which fees were sought, the time spent representing Sanjeev and Shabnum, and the hourly rate charged.  See 
Raintree
, 173 Ill.2d at 495-96.  By any definition, that was a hearing.

Following the contribution hearing, in the Memorandum Opinion dated July 23, 1999, the trial court made the following finding with respect to contribution:

"Given the court's consideration of the facts of this case and the factors set forth in Sections 503 and 504 of the [IMDMA], the court hereby orders Sanjeev to contribute the additional sum of $55,000 toward the outstanding balance of attorneys' fees and costs incurred by Shabnum ***."  Mem. Op. at 3 (July 23, 1999).

The trial court did not abuse its discretion when it ordered "Sanjeev to contribute the additional sum of $55,000 toward the outstanding balance of attorneys' fees and costs incurred by Shabnum."  Mem. Op. at 3 (July 23, 1999). 

THE AMOUNT OF SHABNUM'S ATTORNEYS' FEES

Sanjeev contends the trial court abused its discretion when it ordered him to pay Shabnum's attorney fees in the amount of $90,000 
in
 
toto
.  

Attorney fees are generally the responsibility of the party who incurred the fees.  
McGuire
, 305 Ill. App. 3d at 479.  " 'The propriety of an award of attorney fees is dependent upon a showing by the party seeking them of an inability to pay and a demonstration of the ability of the other spouse to do so.' "  
In re Marriage of Minear
, 181 Ill. 2d 552, 562, 693 N.E.2d 379 (1998), quoting 
In re Marriage of Bussey
, 108 Ill. 2d 286, 299-300, 483 N.E.2d 1229 (1985).   

A court may consider a party's prospective as well as her or his current income in awarding attorney fees.  
In re Marriage of Krivi
, 283 Ill. App. 3d 772, 670 N.E.2d 1162 (1996).  The spouse seeking the award of attorney fees need not be destitute.  
In re Marriage of Broday
, 256 Ill. App. 3d 699, 706, N.E.2d 790 (1993). It is sufficient that payment would exhaust the spouse's estate or strip the spouse's means of support or undermine the spouse's economic stability.  
In re Marriage of Carpenter
, 286 Ill. App. 3d 969, 976, 677 N.E.2d 463 (1997).   

The allowance of attorney fees in a dissolution case and the proportion to be paid by each party are within the trial court's discretion and will not be disturbed on appeal absent an abuse of that discretion or unless it is against the manifest weight of the evidence.  
Minear
, 181 Ill. 2d at 561.

The evidence established Shabnum's fees were approximately  $116,392 ($40,000 retainer and interim fees, and $76,392 requested in contribution hearing), the payment of which, even with her current residence and employment, would compel Shabnum to invade her financial assets, further exhaust her meager estate, and clearly undermine her economic stability.  See 
In re Marriage of Cantrell
, 314 Ill. App. 3d 623, 630-31, 732 N.E.2d 797 (2000).

Sanjeev's marital and non-marital estate is large, income-producing, and establishes his financial ability to pay Shabnum's attorney fees.  The commitment by Shabnum's father to guarantee her attorneys' fees does not affect the propriety of the trial court's fee award.  See 
McGuire
, 305 Ill. App. 3d at 479-80.  The trial court did not abuse its discretion by ordering Sanjeev to pay Shabnum's attorneys' fees in the amount of $90,000.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

HALL, P.J., and CERDA, J., concur.