2022 IL App (2d) 210369-U
No. 2-21-0369
Order filed November 29, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF KRISTIN O'NEIL, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Petitioner-Appellant, | ) ) | |
| and | ) ) | No. 10-D-272 |
| DANIEL O'NEIL, | ) ) ) | Honorable Charles W. Smith, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not abuse its discretion when it reduced petitioner's child support obligation following the emancipation of the parties' older child. The trial court did not abuse its discretion when it awarded respondent $50,000 in attorney's fees and costs. Affirmed.

¶ 2    The parties, Dan O'Neil and Kristin O'Neil, married in 2001 and had two children, born in 2003 and 2005. Kristin filed a petition for dissolution of marriage in 2010, at which time both parties were 40 years old. The trial court entered a judgment for dissolution of marriage in 2012 that incorporated the parties' marital settlement agreement (MSA) and joint parenting agreement (JPA). The court ordered joint custody, with Kristin being the primary residential parent. Dan

agreed to pay Kristin monthly child support of $7500 and maintain the children on his health insurance, while the parties agreed to equally split the children's extracurricular and school expenses. The MSA further provided that each child is the beneficiary of a separate irrevocable trust intended to fund their respective college educations and related expenses, and that those funds should be exhausted before either party should be required to contribute to the children's college expenses. Pursuant to a subsequent 2017 agreed order, Dan's child support obligation was increased to $9375.

¶ 3    Dan later filed a petition to modify child support, which the trial court granted. Kristin filed a petition for contribution to attorney's fees and costs from Dan; the trial court awarded Kristin $50,000. Kristin appeals, arguing the trial court abused its discretion by reducing Dan's child support obligation and by ordering Dan to pay just $50,000 of her attorney's fees, leaving her to pay the remaining $157,000. We affirm.

¶ 4                          I. BACKGROUND

¶ 5    Dan filed a petition to modify child support in January 2020, asserting that there had been a substantial change in circumstances justifying a reduction in his child support obligation in that his employment was terminated, resulting in a significant decrease in his income. He amended the petition in January 2021, asserting that the upcoming emancipation of his older child was an additional substantial change in circumstances justifying a reduction in his child support obligation. The trial court conducted a bench trial that spanned multiple non-consecutive days from October 2020 to March 2021.

¶ 6    In relevant part, Dan testified that he earned $842,563.47 while working for Charles Schwab in 2019 but was terminated in November of that year. Rather than search for similar employment, Dan decided to pursue an opportunity to start an investment advisory firm with a

partner. At an October 2020 trial date, he was still exploring a partnership. As of a March 2021, he and a partner had formed an LLC and had begun raising funds. His assets at the time of trial exceeded $20 million.

¶ 7    Kristin testified that she was 51 years old and in good health. The older child would graduate from high school on June 5, 2021, and turn 18 the following day. The other child was one year younger.

¶ 8    Kristin earned a bachelor's degree in English from DePauw University in 1991 and worked for First National Bank of Chicago as a corporate meeting planner for 11 years. She was vice president of the corporate events planning department when she left the bank in 2003 to focus on raising the children. She was earning about $70,000 per year. She did not work outside the home after that time, including after the divorce. Pursuant to the dissolution judgment, she received her nonmarital property, including her home, and a $2.5 million lump sum settlement. The parties waived maintenance.

¶ 9    During the trial, the trial court ordered Dan to pay $50,000 to Kristin's counsel as an interim award. After the trial ended, Kristin filed a petition for contribution to attorney's fees and costs from Dan and attached a financial affidavit dated December 30, 2020. Subsequently, the court entered an April 15, 2021, written order on Dan's petition to modify child support in which it found that "[t]here has been no substantial change in circumstances in Dan's resources or in his lifestyle [and] Dan has not established that after his loss of income from [Charles] Schwab [& Co.] that he lacks the ability to pay support in accordance with his agreement." Noting the upcoming emancipation of the parties' older child, however, the court explained that "[s]ection 510(d) mandates that unless otherwise provided the obligation to pay child support terminates when a child turns 18 and has graduated high school" and set another hearing to determine the new amount

of child support and to consider Kristin's fees petition. The court also found that Kristin then had total investments worth $1,891,015.90.

¶ 10    At the hearing, the trial court discussed relevant factors. There were no obligations from a prior marriage, the parties split custody 50/50, and tax consequences were not a factor. The court considered each party's contributions to the acquisition of marital assets, the duration of the marriage, and asset division. Kristin had agreed to accept $2.5 million in lieu of maintenance; however, Kristin's financial resources were "limited and getting smaller."

¶ 11    The trial court "considered heavily the reasonable opportunity of each spouse for the future acquisition of capital and assets." Specifically, it considered the fees award Kristin sought in her petition for contribution—approximately $200,000—as a percentage of each party's respective wealth, noting that Dan's financial affidavit indicated he had wealth exceeding $25 million as compared to Kristin's financial affidavit indicating wealth of under $2 million. The court did not consider any attorney billing records. Further, the court noted Kristin's prior "successful career with a bank"; her choice not to seek employment outside the home following the dissolution of marriage; and each party's age, health, station and occupation, stating, "they're both young people with a lot of years left to live and a lot of ability to do things in the economic world." The court also reasoned,

> "I cannot justify telling a man who lost a $900,000 a year job that the premise for the modification and support because of that and because one of the children is emancipated and now he gets to pay more for one than he was paying for two. The law is not that illogical."

¶ 12    In its final written order, dated June 7, 2021, the court modified Dan's child support obligation, ordering him to pay $4500 per month beginning on June 1, 2021, and terminating upon

the 18th birthday or the date of high school graduation for their younger child, whichever occurred later. The court also awarded Kristin $50,000 for attorney's fees and costs for the reasons stated on the record.

¶ 13    Kristin timely appeals.

¶ 14                                    II. ANALYSIS

¶ 15    Kristin argues the trial court abused its discretion in two respects: (1) by making a downward modification of Dan's child support obligation and (2) by denying Kristin full contribution to her attorney's fees and costs. We address each claim in turn.

¶ 16                           A. Reduction of Child Support

¶ 17    In a proceeding for modification of a previous order for child support under section 510 of the Illinois Marriage and Dissolution of Marriage Act (IMDMA), a trial court may order a parent owing a duty of support to pay an amount that is reasonable and necessary. 750 ILCS 5/505(a) (West 2020). "An order for child support may be modified *** upon a showing of a substantial change in circumstances." *Id.* § 510(a)(1). Generally, "provisions for the support of a child are terminated by emancipation of the child, or if the child has attained the age of 18 and is still attending high school, provisions for the support of the child are terminated upon the date that the child graduates from high school or the date the child attains the age of 19, whichever is earlier." *Id.* § 510(d).

¶ 18    The party seeking relief bears the burden of showing a substantial change in circumstances. *In re Marriage of Verhines & Hickey*, 2018 IL App (2d) 171034, ¶ 51. A substantial change in circumstances typically means either a change in the needs of the child or in the obligor's ability to pay. *In re Marriage of Izzo*, 2019 IL App (2d) 180623, ¶ 25. After a movant makes the requisite showing, the court must consider the statutory factors for determining the new amount of child

support. *Id.* A non-guidelines child support order should consider the best interests of the child, as well as:

> "(A) the financial resources and needs of the child;
>
> (B) the financial resources and needs of the parents;
>
> (C) the standard of living the child would have enjoyed had the marriage or civil union not been dissolved; and
>
> (D) the physical and emotional condition of the child and his or her educational needs."
>
> 750 ILCS 5/505(a)(2) (West 2020).

The needs of the child remains the primary consideration in determining the necessary level of support. See *Ingwerson v. Woeckener*, 141 Ill. App. 3d 647, 649 (1986).

¶ 19 First, Kristin contends that the trial court erred as a matter of law because it ordered a reduction in Dan's child support obligation, despite finding that "[t]here [was] no substantial change in circumstances in Dan's resources or in his lifestyle even though he ha[d] lost a high paying position with Schwab." See *In re Marriage of Solecki*, 2020 IL App (2d) 190381, ¶ 73 ("Absent the threshold showing of a substantial change, the trial court may not reach the question of whether child support should be modified."). Kristin argues that this finding precluded the trial court from considering whether to modify child support in that Dan did not make a threshold showing.

¶ 20 We disagree. "There is no precise formula for a substantial change in circumstances. 'The law is clear that only some change in circumstances of *any nature* that would justify equitable action by the court in the best interests of the child is required.' [Citation.]" (Emphasis in original.) *Id.* The trial court's statement indicated that it found no substantial circumstances *with respect to Dan's resources or in his lifestyle*, but this was not a complete accounting of all the facts of the

case. See *supra* ¶ 9. Kristin overlooks that the substantial-change-in-circumstances inquiry is not limited to the child support obligor's financial circumstances; the age of the parties' children is a relevant consideration. See *In re Marriage of Ferraro*, 211 Ill. App. 3d 797, 800 (1991) ("Generally, evidence that a child has attained the age of majority constitutes a substantial change in circumstances which necessitates the modification of child support unless: (1) the parties agree on a different terminating event; (2) the court orders support payments to continue based on the non-minor child's physical or mental disability or when educational expenses are sought; or (3) the child becomes emancipated at an earlier age."). Accordingly, this argument is unavailing.

¶ 21 Kristin next claims that the trial court failed to adequately account for the younger child's needs. First, she claims the trial court based its order solely on its "discomfort" with having Dan "pay more for one than he was paying for two" after losing his high-salary job. Second, Kristin notes her financial affidavit, which specified $18,380.31 total monthly living expenses, excluding Kristin's personal expenses and including $9454 in "Minor and Dependent Child Expenses," of which $6445 constituted expenses for the younger child's extracurricular activities. Kristin acknowledges that the extracurricular expenses of the children were to be shared pursuant to a provision of the MSA, leaving about $3000 in monthly child expenses. Kristin last asserts that the trial court failed to consider her own financial situation relative to Dan's.

¶ 22 Setting aside the younger child's extracurricular expenses (leaving only household and transportation expenses), Kristin's affidavit reflects that the totally monthly expenses for *both* children was about $12,000. But Kristin states that her monthly expenses *for the younger child* exceeded Dan's $9375 monthly child support obligation at the time of trial, citing the March 28, 2017, agreed order. Kristin thus implies that she spent more than $9375 to house and transport her younger child while spending less than $3000 on housing, transportation, *and* extracurricular

activities for her older child. This argument is illogical and unsupported by the record in that Kristin provides no accounting for how non-extracurricular expenses were attributed to each child individually.

¶ 23     Dan responds that the trial court based its finding that a substantial change in circumstances had occurred primarily on the older child's emancipation. Further, the court did specifically consider the younger child's ongoing needs when modifying Dan's child support obligation. Indeed, the IMDMA provides for a duty of support owed *to a child* and defines "child" as "any child under age 18 and any child age 19 or younger who is still attending high school." 750 ILCS 5/505(a) (West 2020). Thus, "[u]nless otherwise provided in [the IMDMA], or as agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child, or if the child has attained the age of 18 and is still attending high school, provisions for the support of the child are terminated upon the date that the child graduates from high school or the date the child attains the age of 19, whichever is earlier." *Id.* § 5/510(d). Attaining the age of 18—the age of majority—is an emancipating event. *In re Marriage of Loomis*, 348 Ill. App. 3d 972, 974 (2004). As of June 7, 2021—the date of the trial court's judgment ordering a reduction in child support—the older child had attained the age of 18 and graduated from high school.

¶ 24     Here, the trial court found that Dan had assets in excess of $20 million and that there was not a significant change in his lifestyle; however, the court recognized that the older child's reaching the age of 18 and graduating from high school constituted a substantial change in circumstances. The court set support at $4500 per month, down from $9375. Considering Kristin's claim that her monthly expenses for both children together was approximately $12,000, she provides no basis to conclude that expenses attributable to the younger child represented more than

half of that figure. Thus, it was reasonable for the trial court to infer that half of that amount can be attributed to expenses for the younger child. Essentially, the trial court's judgment terminated Dan's child support obligation with respect to the older child, who is no longer a child owed a duty of support, and only slightly deviated down from half the original amount ($9375).

¶ 25     Kristin concedes that subsection 510(d) of the IMDMA "ended Dan's obligation to support [the older child]," but counters that "nothing in its plain language *ipso facto* required any reduction of his continuing child support obligation with respect to his other daughter***." However, Kristin makes no argument that the trial court incorrectly applied the law.

¶ 26     Finally, in her response brief, Kristin argues that she was not required to identify the portion of her living expenses attributable to the younger child, adding that "counsel submitted that the expenses attributable to [the younger child] were $10,000 per month." Comments of counsel are not evidence, thus this argument lacks merit.

¶ 27     We hold that the trial court did not abuse its discretion when it modified Dan's child support obligation due to the emancipation of the parties' older child.

¶ 28                              B. Attorney's Fees

¶ 29     Next, Kristin argues that the trial court erred in denying her full contribution to her attorney's fees and costs. The trial court ordered Dan to pay $50,000 of Kristin's attorney's fees and costs.

¶ 30     A trial court may order a party to pay the other party's reasonable attorney's fees and costs in connection with the defense of any proceeding under the IMDMA. 750 ILCS 5/508(a)(1) (West 2020). "The party seeking an award of attorney fees must establish her inability to pay and the other spouse's ability to do so." *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005). "[T]he inability to pay standard was never intended to limit awards of attorney fees to those situations in

which a party could show a $0 bank balance." *In re Marriage of Heroy*, 2017 IL 120205, ¶ 19. "Rather, a party is unable to pay if, after consideration of all the relevant statutory factors, the court finds that requiring the party to pay the entirety of the fees would undermine his or her financial stability." *Id.* A trial court's decision to award attorney's fees is reviewed for an abuse of discretion. *Id.* ¶ 13. A trial court abuses its discretion if an order is arbitrary, fanciful, or unreasonable, and we may affirm on any basis in the record. *Id.* ¶ 24.

¶ 31    Kristin stated in her contribution petition that she incurred a total of $282,067.88 in attorney's fees and costs, of which $75,000 had been paid (Kristin paid a $25,000 retainer fee and Dan paid $50,000 as an interim award), leaving approximately $157,000 after accounting for the award. She argues that her financial circumstances create a $12,000 monthly deficit, thus she would need to partially deplete her assets to pay her remaining attorney's fees. This figure appears to be based on the difference between her claimed total monthly expenses ($21,709.30) and Dan's pre-existing child support obligation ($9375). Further, Kristin contends, Dan's annual passive income at the time of trial was nearly $800,000, approximately 27 times Kristin's annual passive income of $30,000.

¶ 32    Kristin highlights that the trial court did not find her fees to be unreasonable or unnecessary and contends that its award of just $50,000 was an abuse of discretion. In support, she argues: (1) Dan argued in bad faith that his capital-gains income was not income for the purposes of calculating child support, which prolonged the trial and exacerbated attorney's fees for both parties, (2) Dan's conduct required Kristin to file three contempt petitions, and (3) the enormous financial disparity between Kristin and Dan favors fee shifting.

¶ 33    Dan responds that Kristin does have the ability to pay her own attorney's fees. Specifically, he notes that Kristin's financial affidavit lists $1.26 million in liquid assets and nearly $300,000 in

retirement funds. (The trial court found that Kristin had assets worth about $1.89 million.) Dan continues that Kristin has chosen not to work in the years following the parties' divorce. Regarding the contempt petitions, Dan argues that Kristin abandoned two of the petitions after discovery was taken and was ordered to pay $5,000 in attorney's fees due to the second petition she filed. The third petition required appointment of a guardian *ad litem*, whose report "did not support the relief Kristin requested and even noted that her contempt petition seemed to be doing more harm than the alleged incident that precipitated it, and that the matter would have been better resolved through communication than litigation." Dan also contends that Kristin prolonged the litigation by missing deadlines and filing multiple motions for extension.

¶ 34    The relevant inquiry is whether, after considering all the relevant statutory factors, the trial court abused its discretion in ordering Dan to pay just $50,000 in contribution for Kristin's remaining attorney's fees, leaving Kristin to pay approximately $157,000. Initially, we note that Kristin's ability to pay is one of two requirements that must be met in securing an attorney fee award. *Schneider*, 214 Ill. 2d at 174 ("Section 508 of the Dissolution Act allows for an award of attorney fees where one party lacks the financial resources and the other party has the ability to pay. [Citation.] The party seeking an award of attorney fees must establish her inability to pay *and* the other spouse's ability to do so." (Emphasis added.)). Thus, she had to show that paying her remaining attorney's fees would undermine her financial stability. *Heroy*, 2017 IL 120205, ¶ 19 ("[A] party is unable to pay if, after consideration of all the relevant statutory factors, the court finds that requiring the party to pay the entirety of the fees would undermine his or her financial stability."). By awarding just $50,000 to Kristin, the trial court implicitly found that she had the ability to pay the remainder. The outcome thus depends upon whether Kristin showed that she was unable to pay $157,000 in that doing so would undermine her financial security.

¶ 35    To understand whether paying her own attorney's fees would undermine Kristin's financial security, we review prior decisions. In *Heroy*, our supreme court concluded that the trial court did not abuse its discretion when it ordered a party to pay $160,000 of his ex-wife's (the petitioner's) attorney's fees. *Heroy*, 2017 IL 120205, ¶ 21. The trial court had found that the petitioner had minimal capacity for employment in that she was unlikely to resume the career she had before the marriage. *Id.* Further, the petitioner's retirement account would be threatened if she was required to pay the entirety of her fees. *Id.*  The supreme court noted that, at the time of trial, the petitioner's assets were valued at $2,354,296 but had been depleted largely due to her payment of attorney's fees, which she claimed had exceeded $1 million, though the parties had stipulated that $345,000 would be considered reasonable attorney's fees for the litigation. *Id.* The findings supported the trial court's conclusion that the petitioner's financial stability would be undermined if she had to pay her attorney's fees in full. *Id.*

¶ 36    Next, in *In re Marriage of Hasabnis*, 322 Ill. App. 3d 582, 598-99, the appellate court affirmed a $90,000 attorney's fees judgment. The trial court had found that the petitioner's non-marital assets and the assets of the marital estate were both insignificant. *Id.* at 590-91. In the dissolution judgment, the petitioner had been awarded maintenance in gross in the sum of $96,000, jewelry and clothing worth about $21,000, a car worth about $17,100, financial accounts worth about $5000, and various furniture with unspecified value. *Id.* at 588-89. The trial court found that the marriage negatively impacted the petitioner's employment opportunities, though she later disclosed earning about $7000 and spending $1220 monthly while her fees petition was pending. *Id.* at 589, 590. The petitioner's fees were approximately $116,392. *Id.* at 598. The appellate court concluded that payment of the fees would compel the petitioner "to invade her financial assets, further exhaust her meager estate, and clearly undermine her economic stability." *Id.*

¶ 37    Next, in *In re Marriage of Haas*, 215 Ill. App. 3d 959, 965, the appellate court concluded the trial court abused its discretion when it failed to order the respondent to pay the petitioner's $5647.82 attorney's fees. The evidence showed the petitioner earned $558.62 in gross income every two weeks, and the trial court awarded her $600 per month maintenance for 18 months, subject to review, and marital property worth $80,468. *Id.* at 961-62. The appellate court reasoned that the petitioner would be unable to pay her attorney's fees without depleting part of the marital assets awarded to her. *Id.* at 965. In contrast, the respondent could pay the petitioner's fees without depleting assets because his yearly salary was $49,000 and he received two bonuses totaling $16,000 in the year the parties legally separated. *Id.* at 961, 965.

¶ 38    Finally, in *In re Marriage of Schneider*, the appellate court concluded the trial court did not abuse its discretion when it declined to order contribution, and our supreme court affirmed. 343 Ill. App. 3d 628, 638 (2003), *aff'd in part, rev'd in part,* 214 Ill. 2d 152, 175 (2005) (affirming attorney's fees judgment). At the time the petition for dissolution was filed, the petitioner worked part-time as a certified public accountant. *Id.* at 630. The trial court thereafter awarded 67% of the marital assets to the petitioner (the parties waived maintenance), worth approximately $326,000. *Id.* at 631, 633. The petitioner sought contribution for her attorney's fees of $56,000 and expert fees of $12,000. *Id.* at 637. The appellate court concluded that the earning potential of the petitioner "pale[d] in comparison to" that of the respondent. *Id.* at 638. Nevertheless, the petitioner failed to show an inability to pay her own attorney's fees. *Id.*

¶ 39    Based on the foregoing, we cannot say the trial court abused its discretion in determining that Kristin had the ability to pay $157,000. This is not a case in which the petitioner's assets had clearly been depleted largely due to her payment of attorney's fees and the trial court found that the petitioner would be unlikely to resume her career. *Contra Heroy*, 2017 IL 120205, ¶ 21. Here,

Kristin received an award of $2.5 million and waived maintenance pursuant to the judgment of dissolution. The trial court found she had assets worth about $1.89 million. Her total investments had thus decreased by approximately $600,000, which included the payment of a $25,000 retainer fee. Further, she chose not to pursue employment after the parties' marriage ended despite being just 40 years old and having a career before the marriage. The trial court found that she had a "successful career with a bank" and that "they're both young people with a lot of years left to live and a lot of ability to do things in the economic world."

¶ 40    Nor is this a case one in which the petitioner's outstanding attorney's fees exceed her assets. *Contra Hasabnis*, 322 Ill. App. 3d at 588, 598. Kristin's outstanding attorney's fees ($157,000) represent less than 10% of her assets ($1.89 million). Rather, this case is much closer to *Schneider* in that Kristin's earning potential pales in comparison to Dan's, but her assets far exceed her outstanding attorney's fees. *C.f. Schneider*, 343 Ill. App. 3d 628, 637-38 (holding denial of contribution not an abuse of discretion where wife received disproportionate share of marital assets worth five times her outstanding fees).

¶ 41    The facts here are somewhat more comparable to those in *Haas* in that the evidence supports that it is unlikely that Kristin's income will ever approach Dan's. Unlike in *Haas*, however, Kristin has chosen not to work. There is no indication as to what Kristin's present earning potential could be, thus no basis to compare her earning potential to her outstanding fees. Further, Kristin received $2.5 million following the divorce and still has about $1.89 million in assets, far exceeding the property distribution to the petitioner in *Haas. Contra Haas*, 215 Ill. App. 3d 959, 961-62. If required to pay $157,000 of her remaining attorney's fees, Kristin would still be left with more than $1.7 million in assets.

¶ 42    Kristin largely relies on the financial disparity between her and Dan. This disparity is

relevant as to Dan's ability to pay, which is not in dispute. To the extent this disparity is relevant as to *Kristin's* ability to pay, however, the trial court did specifically consider the amount of fees sought as a percentage of each party's respective wealth. We cannot say the trial court gave inadequate weight to the parties' relative wealth.

¶ 43    Based on the foregoing, we hold that the trial court did not abuse its discretion when it ordered Dan to pay Kristin $50,000 in contribution to her attorney's fees.

¶ 44                                III. CONCLUSION

¶ 45    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 46    Affirmed.